Caldwell, Ch.
dissenting. I dissent from the attempted qualification of the rule, that the declarations made by a father when he sent negroes to a child, are admissible to ascertain whether a gift or a loan was intended, though made in the absence of the child; this was expressly ruled in Hatton v. Banks, which was decided upwards of thirty years ago, and I know of no case in the Court of Law. that has, since that time, in the slightest degree, modified the principle. In that case the presiding Judge charged the jury, that th§ declarations of the father, when he sent the negroes to the plaintiff (his son-in-law) should have no weight in their determination, because the plaintiff was not 'present: and that they should not regard the declarations of the plaintiff (who had said he had been offered a great price for them, and that if they had been his he would have taken it) because he might be ignorant of his right. The Court of Appeals held, that as the case turned on the question, was this a gift or a loan, these circumstances were entitled to consideration, and were strictly within the rules of law.
Independently of this decision and the recognition of the rule in subsequent cases, it is clear that such a declaration, as a part of the res gestee, was competent. Booth v. Dunning. What is said in doing an act, is often such an important and inseparable incident, that it alone can shew the motive of the action and characterize the act. The case of Parris v. Jenkins is a striking illustration: that was an action of trover, by the father-in-law against his son in-law, for a negro woman, Emily, and her three children, who had gone, in some way unexplained, into defendant’s possession in 1838, the year after he married plaintiff’s daughter, where *13 they had remained till the spring of 1841, when they were brought in a wagon by the driver, a negro of the plaintiff, to the plaintiff’s; the negro told the defendant that his master had sent for Emily to help a little while about his crop, as he was backward. They remained at the plaintiff’s about two months, and then returned to defendant’s. The declaration of the negro was held competent as a part of the res gestee. “ It is just,” says Justice Wardlaw, delivering the opinion of the Law Court of Appeals,. “ as if Jenkins, adopting the words of the negro, had said when he sent the woman, ‘ I send her to help a little while, because my father-in-law is backward,’ and so the words are a part of the res gestee — an explanation, by cotemporaneous acts or declarations, of the motives or objects of the principal act, which would otherwise be of ambiguous or contrary import.”
1st. Phill.Ev. 231, Note 444, p. 585, vide Cases cited in margin,
1 Starkie on Ev x302,268.
l Green, Ev. sec-108‘
The principle that declarations cotemporaneously made with doing an act are competent, is recognized and illustrated by every elementary writer on evidence. Phillips says, “hearsay is often admitted in evidence, as constituting a part of the transaction which is the subject of inquiry ; the meaning of which seems to be, that when it is necessary in the course of a cause to inquire into the nature of a 'particular act, or the intention of the person who did the act, proof of what the person said at the time of doing it, is admissible evidence, for the purpose of showing its true character. Star-kie, speaking of the same subject, says, “ to this head, also, the admissibility by tenants has sometimes been referred, and it seems that such declarations are clearly referable to this principle, in all cases where the nature and quality of an act of ownership or dominion, or of the possession, is questioned, and requires explanation, or when the nature and quality of the possession, are questioned, and the cotemporary declaration the party doing the act, or of the party in possession, serves to elucidate and explain the nature and quality of such act or possession.”
“ There are other declarations,” says professor Greenleaf, “ which are admitted as original evidence, being distinguished from hearsay by their connexion with the principle fact under investigation. — The principal points of attention are whether the circumstances and declarations offered in proof were co-temporaneous with the main fact under consideration, and whether they were so connected with it as to illustrate its character.” After giving the instance of the cry of the mob accompanying Lord George Gordon (who was tried for treason) as forming a part of the res gestee, he says — “ So also where a person enters into land, in order to take advantage of a forfeiture, to foreclose a mortgage, to defeat a disseisin, or the like, or changes his actual'residence or domicil, or is upon a journey, or leavers his home, or returns thither, or remains *14 abroad, or secrets himself, or in fine does any other act mate-t rial to be understood, his declarations made at the time of the transaction and expressive of its character, motive or object, are regarded as verbal acts indicating a present purpose and intention,” and are therefore admitted in proof, like any other material facts.
The declaration accompanying the act constitute its character, and to exclude them would be permitting presumptions to prevail over facts, and would be substituting the least satisfactory for the most conclusive proof — conjecture for certainty. To reject them as incompetent would introduce all the evil consequences that are avoided by excluding a garbled statement. The rights of parents would be put in the most imminent peril if any other rule were adopted: the loan of a slave or other personal property to a child for a month, a week, or for a day, might have the effect of transferring the title, by raising the presumption of a gift, if the declarations at the time of the delivery were inadmissible, as they are often the only evidence of the intention of the parent, and the reservation of his rights. The danger apprehended from such evidence operating asa surprise or fraud upon the child, or his creditors, or purchasers from him, is imaginary; the question of fraud would not depend merely upon the declarations, but upon the proofs of what were the motives and circumstances of the parties, and especially whether the transaction was bona fide or colorable. To exclude such evidence would amount to passing an Act prohibiting parol loans, unless the child was present, of which the injurious effects cannot be adequately estimated.
The effect of such a rule would be, not only to destroy in many instances the confidence and kindness that subsist between parent and child, but would convert their dealings into the most formal and mercenary transactions of life; the parent who was not able to give would be reluctant to lend, when he knew he ran the risk of losing the property, and selfish considerations of his own interest would soon chill the current of kindness towards the child. The law, as far as possible, should aid the affections, and encourage honesty and fair dealing; but abolish this rule, and children will have-another inducement to ingratitude, and their cormorant creditors, who have, during their nonage, seduced them into dissipation, and swindled them into debt, will be seen pouncing down upon the property the parent has lent to alleviate the wants or to administer to the necessities of his child.— Suppose a common case, a daughter marries a worthless husband involved in debt, she is taken sick and has no one to attend to her, shall the servant that her father sends to wait upon her during her illness, be levied upon by the executions against her insolvent husband, to whom it would be the height *15 of folly and madness to make a gift, and which every reasonable mind knows the father-in-law never intended 1 Yet, unless the insolvent son-in-law he present when the servant is sent, although a dozen witnesses testify to the fact of the father’s declaring that it was a loan, the marital rights attach, and the creditors, often the guilty abettors of his vices, receive the perverted benefit of a parent’s affection.
As to the second branch of the case, it depends upon evidence, and my opinion has undergone no change.
Whether the insinuations made against Kennedy be true or not, the defendants declined to make an attack upon his general character; and whatever may have been his motives in soiling the negroes to the plaintiff, she cannot be made responsible for them, unless she knew his intention was fraudulent, and co-operated to carry it into effect. The indisputable fact that she paid him $400, which he applied in extinguishing executions in the sheriff’s office against him, rebuts the presumption that the sale was merely a colorable transaction.
The plaintiff’s son, who is dead, drew the bill of sale of the negroes — she swore to her bill for injunction — and Kennedy testified that his sale of the negroes to her was bona fide, and the corroborating circumstance of his payment of the $400 in the sheriff’s office at the time, is evidence enough to neutralize a mere presumption, for it cannot be contended that there is any thing in the transaction that makes it a fraud per se, and I think it is carrying the doctrine of presuming fraud entirely too far, to come to the conclusion that all this evidence is false, and the sale fraudulent.
Notwithstanding what was said about the plaintiff’s indebtedness, the proof was sufficient to show her adequacy of means to raise the money to pay for the negroes, and Kennedy’s unsatisfactory account of his closing the balance of her account on his books, ought not to impair her title as a bona fide purchaser, unless the amount had been so great as to warrant the conclusion that that settlement was a part of this transaction and contaminated it with fraud. Her payment of $400, which has been applied to his debts, shews a valuable if not an adequate consideration; and if the most stringent construction be put on the transaction, she ought at least to be subrogated to the rights of those creditors whose debts she has extinguished. But in the material point the defendants'failed in their proof to bring home the scienter of fraud to the plaintiff; without strong evidence to sustain this point, her purchase ought to be supported.

Decree modified.